**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**RUSTY HOLLOWAY**                                                                    **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 2:15-CV-86-KS-MTP**

**LAMAR COUNTY,** *et al.*                                                           **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants Mike Purvis and Jason McNelly's Motion for Summary Judgment [35]. After reviewing the submissions of the parties, the record, and the applicable law, the Court finds that this motion should be granted in part and denied in part.

**I.  BACKGROUND**

On June 22, 2015, Plaintiff Rusty Holloway ("Plaintiff") filed this action against Defendants Lamar County, Mike Purvis ("Purvis"), and Jason McNelly ("McNelly").[1] Suit against Defendants is brought in their individual and official capacities. Specifically, Plaintiff brings claims under 42 U.S.C. § 1983, alleging that Defendants violated his Fourth and Fourteenth Amendment rights by illegally seizing him, falsely imprisoning him, unlawfully searching his person and car, and using excessive force. Most of the relevant facts in the case are disputed, but the following is a description of the events that are uncontested.

On June 20, 2014, Plaintiff was involved in a vehicular accident with a Lamar County deputy at the intersection of Highways 589 and 98. After the accident, Plaintiff informed officers on the scene that he had a knife and a gun, and cooperated with them when they took possession of these

---

[1]The Court will use the collective term "Defendants" to refer only to Mike Purvis and Jason McNelly in the current motion, as the motion was filed only by the two individual defendants.

weapons, though where these weapons were located is in dispute. Officers at the scene included Defendants and Deputy Lynn Ann Phillips ("Phillips"). Some time later, Plaintiff's friend, Donald Earl Weathersby ("Weathersby"), arrived on scene, and Plaintiff told him that he wanted to go to the hospital. For reasons in dispute, however, when the ambulance arrived on the scene, Plaintiff refused to take it. Plaintiff's sisters then arrived. Some time during these events, Defendant Purvis learned that there was a Writ to Take Custody for Mental Examination of Retention ("Writ to Take Custody") [35-16] for Plaintiff signed by the Chancery Court of Jefferson Davis County, and the Sheriff of Lamar County directed Purvis to take Plaintiff into custody.

Because officers on scene were insisting that neither Weathersby nor his sisters could take him to the hospital, Plaintiff decided to walk to Wesley Medical Center. Plaintiff began walking east along Highway 98 towards Hattiesburg, though whether he walked in the middle of the highway, on the side, or in the median is disputed. Defendants and the other officers on the scene followed him, and at some point, ordered him to stop. What happened between that time and the time Plaintiff left the scene in the ambulance is largely in dispute. However, it is undisputed that Plaintiff was tased by Defendants during this period and taken into custody.

## II.  DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then

"come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

The Court assumes Defendants bring their motion solely for the claims against them in the individual capacities, as the immunities they purport to assert are not available to the claims against them in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L.Ed.2d 301 (1991) ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses.").

As Plaintiff has conceded that he has no claim against Defendants for the alleged illegal search, the Court will **grant** Defendants' Motion for Summary Judgment [35] as to this claim and it will be **dismissed with prejudice** against Defendants both in their official and individual capacities.

### B. Quasi-Judicial Immunity

Defendants claim that suit against them for carrying out the commitment order issued by Jefferson Davis County, is barred based on absolute quasi-judicial immunity. Ordinarily, quasi-judicial immunity is afforded to "agency officials who, irrespective of their title, perform functions essentially similar to those of judges or prosecutors, in a setting similar to that of a court." *O'Neal v. Mississippi Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997). Defendants cite three cases for their contention that absolute quasi-judicial immunity protects them in this action: *Dudley v. Johnson*, Civ. A. 95-1755, 1995 WL 710916 (E.D. La. Nov. 30, 1995), *Roland v. Phillips*, 19 F.3d 552 (11th Cir. 1994), and *Robinson v. Freeze*, 15 F.3d 107 (8th Cir. 1994).

In *Dudley*, which cites both *Roland* and *Robinson*, the Eastern District of Louisiana recognized that "[c]ourts have extended absolute quasi-judicial immunity to courtroom bailiffs and deputies only in cases where these officials were acting pursuant to a direct judicial order. . . ." 1995 WL 710916, at *2. It went on to conclude that a deputy assigned to provide security and maintain order in a courtroom was not immune under quasi-judicial immunity for excessive force because he was not acting pursuant to a direct judicial order. *Id.*

In *Roland*, the Eleventh Circuit held

> When we have a writ which is fair on its face, issued from a court which had jurisdiction both of the parties and of the subject-matter of the suit in which it was issued, and which was issued in the regular course of judicial proceeding by that court, and which the officer of the court in whose hands it was placed is bound to obey, the implementing officer is protected in executing the court's mandate.

4

19 F.3d at 556 (quoting *Matthews v. Densmore*, 109 U.S. 216, 218, 3 S. Ct. 126, 27 L.Ed. 912 (1883)) (internal quotation omitted). The court went on to hold that the deputy-defendant was entitled to absolute quasi-judicial immunity because he was acting pursuant to "the explicit instructions of a written, judicial restraining order." *Id.*

Finally, in *Robinson*, the Eighth Circuit found that quasi-judicial immunity was extended to non-judicial officials for "acts they are specifically required to do under court order or at a judge's direction." 15 F.3d at 109. In that case, the trial judge had delegated discretionary judicial powers to the bailiff, "including the task of ensuring the jury's sequestration and of monitoring proper jury functioning during its deliberations." *Id.* The appellate court denied immunity because the record did not disclose whether all the challenged conduct was "done under the trial judge's authority and direction." *Id.*

The common thread in all three of the cited cases is that a non-judicial official is only entitled to absolute quasi-judicial immunity when he is bound to obey a direct order of a court. The Writ to Take Custody [35-16] in this case is specifically directed at the Sheriff of Jefferson Davis County. Defendants are deputies in Lamar County and were under no obligation to assist the Sheriff of Jefferson Davis County in carrying out this writ. No court has extended quasi-judicial immunity to a non-judicial official not bound by a court order, and this Court will not recognize such immunity here.

### C. Qualified Immunity

Defendants argue that Plaintiff's claims under 42 U.S.C. § 1983 fail because they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555

U.S. 223, 231, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)) (internal quotations omitted). This doctrine, where applicable, is a bar to suit altogether "rather than a mere defense to liability." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985)).

There are two steps in deciding whether qualified immunity applies. *Id.* at 232. "First, a court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001)) (internal citations omitted). If the plaintiff can establish this, then "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* If both steps are satisfied, qualified immunity does not apply.

### 1. Unlawful Seizure/False Imprisonment

Plaintiff brings claims of unlawful seizure and false imprisonment in violation of the Fourth and Fourteenth Amendments, both under 42 U.S.C. § 1983. As both claims ultimately depend on whether there existed probable cause to arrest, the Court analyzes these claims together.

#### a. Warrant

"Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982). Defendants argue that the Writ to Take Custody [35-16] functions the same as a valid arrest warrant. Plaintiff argues that it does not. Neither side, however, offers any authority in support of their position. The Court finds, however, that Defendants were not authorized to take custody under the writ, and even if they were, they have presented nothing to establish that this writ fulfilled the warrant requirement of the Fourth Amendment.

The Writ to Take Custody [35-16] specifically authorizes only the Sheriff of Jefferson Davis

County, and his deputies by necessary extension, to take custody of Plaintiff. If the chancery court wanted to authorize the sheriff's department of a different county to take custody of Plaintiff, that was within its authority under MISS. CODE ANN. § 41-21-65. *See* Re: Transportation of persons in need of treatment under Section 41-21-65, 2004 WL 3015461, at *2 (Miss. A.G. Nov. 5, 2004). The 2004 Advisory Opinion from the Mississippi Attorney General regarding the law under which the writ was issued, makes clear that the writ must be directed at the entity which takes the required action under the writ. *See id.*

Defendants argue that to "suggest that a Sheriff could not carry out valid orders of any court in Mississippi outside of his County" would be illogical because it would make "outstanding warrants, child custody orders, [and] habeas orders issued" in other counties unenforceable. (Defendants Rebuttal [43] at p. 3.) This is a misleading argument as the laws that authorize Mississippi courts to issue warrants, child custody orders, habeas orders, and writs such as in this case are not the same, and they necessarily carry different requirements and effects. For example, Mississippi law specifically grants arrest warrants effect across county lines. *See* MISS. CODE ANN. § 99-3-19.

Even if Defendants were authorized under the Writ to Take Custody [35-16], Defendants have presented no argument or prior precedent that would establish that such a writ would fulfill the warrant requirement of the Fourth Amendment or that they were objectively reasonable in their belief that it did. The Court knows of no court that has held that a civil commitment order is the constitutional equivalent of an arrest warrant. Importantly, Defendants themselves knew that the Writ to Take Custody [35-16] was *not* an arrest warrant. It is clearly established law that a warrantless arrest without probable cause is unconstitutional. *See Trejo v. Perez*, 693 F.2d 482, 488 n.10 (5th Cir. 1982), *abrogation on other grounds recognized by Greenlee v. Allread*, 126 F.App'x

7

656 (5th Cir. 2005). Defendant's seizure and subsequent imprisonment of Plaintiff, then, is not protected by qualified immunity on the basis of the Writ to Take Custody [35-16].

### b.     Probable Cause

Plaintiff's claims for unlawful seizure and false imprisonment may still be barred, however, if Defendants had probable cause to arrest.[2] "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)) (internal quotations omitted). Defendants are entitled to qualified immunity "if a reasonable officer in [their] position could have believed that, in light of the totality of the facts and circumstances of which [they were] aware, there was a fair probability that [Plaintiff] had committed or was committing an offense." *Id.* at 656. Because this is a fact-intensive inquiry and many of the relevant facts are in dispute, the Court on summary judgment is required to view the facts in the light most favorable to Plaintiff as the nonmovant. *See Sierra Club, Inc.*, 627 F.3d at 138.

Defendants argue probable cause existed to arrest Plaintiff for three offenses: disorderly conduct, resisting arrest, and leaving the scene of an accident.

MISS. CODE ANN. § 63-3-401(1) makes it an offense for "[t]he driver of any vehicle involved in an accident resulting in injury" to leave the scene of the accident "until he has fulfilled the

---

[2]Defendants make the argument that they had probable cause to arrest, but in Defendant McNelly's own deposition he admits that Plaintiff was not actually arrested. (*See* McNelly Depo. [35-14] at p. 15.) However, because the Court does not find that the facts, when viewed in the light most favorable to Plaintiff, establish probable cause, it does not find further clarification on this issue necessary at this point in time.

requirements of Section 63-3-405." In relevant part, § 63-3-405 requires a driver involved in an accident to "give his name, address and the registration number of the vehicle he is driving." From the Accident Report [35-4], it is clear that Plaintiff's name, address, and vehicle information was recorded. There is nothing in the record before the Court that suggests that any of this information was given after Plaintiff began walking away, nor does anything in the record suggest that the facts and circumstances would reasonably make Defendants believe that Plaintiff was leaving the scene without providing this information. They would not have probable cause to arrest on this offense then.

Defendants also argue that they had probable cause to arrest for disorderly conduct. To analyze this assertion, the Court must first decide when the arrest was made and what conduct, prior to this arrest, justified it. For Fourth Amendment purposes, "[a]n arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority." *United States v. Holloway*, 962 F.2d 451, 456 (5th Cir. 1992) (quoting *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.690 (1991)) (alteration and emphasis in original). Plaintiff submitted to Defendants authority when he stopped walking once he was ordered to do so. (Plaintiff Depo. [38-1] at p. 44.) Any conduct prior to this could give probable cause for arrest for disorderly conduct, but any conduct after would be deemed resisting arrest instead.

Defendants claim that Plaintiff "refused to answer multiple requests from Deputy Phillips" when she first arrived on the scene, but Plaintiff testified that he complied with the officers on the scene, to the point of allowing them to take his license and knife out of his pockets and telling them about the gun he kept in his car. (Plaintiff Depo. [38-1] at p. 38.) Defendants further argue that Plaintiff disobeyed commands to stop once he began walking down Highway 98, but Plaintiff contends that he stopped as soon as he was told to stop. (Plaintiff Depo. [38-1] at p. 43.)

Defendants point to no other conduct that would have given probable cause to arrest for disorderly conduct. As the Court must view facts in the light most favorable to Plaintiff as the nonmovant, his facts are accepted as true. The Court cannot find that a reasonable officer would have believed there to be probable cause to arrest for disorderly conduct based on Plaintiff's presentation of the disputed facts.

Furthermore, to succeed on their argument that they had probable cause to arrest for a resisting arrest offense, Defendants must prove that they had probable cause to arrest on an antecedent offense. Because MISS. CODE ANN. § 97-9-73 only makes it illegal to resist a *lawful* arrest and because there was no probable cause to arrest for an antecedent offense, there can be no probable cause to arrest for resisting an unlawful arrest made without probable cause. Furthermore, Defendant McNelly testified that Plaintiff was never actually under arrest, which would make it impossible for him to resist arrest. (McNelly Depo. [35-14] at p. 15.)

Therefore, the Court does not find that a reasonable officer in Defendants' position "could have believed that, in light of the totality of the facts and circumstances of which [they were] aware, there was a fair probability that [Plaintiff] had committed or was committing an offense." Because it is well-established that arrests made without a warrant or probable cause are violations of the Fourth Amendment, *see Trejo*, 693 F.2d at 488 n.10, the Court does not find that Defendants are entitled of qualified immunity on Plaintiff's claims of unlawful seizure and false imprisonment under § 1983. *See Haggerty*, 391 F.3d at 656. Defendants' Motion for Summary Judgment [35] will be **denied** as to these claims.

### 2. Excessive Force

Plaintiff contends that Defendants used excessive force against him in violation of his Fourth Amendment rights. To determine whether Defendants are entitled to qualified immunity for a

§ 1983 claim for excessive force, the Court first looks to where there is an underlying constitutional violation.

"[T]o state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive in need, and (3) the use of force that was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 500-501 (5th Cir. 2008). Defendants recognize that Plaintiff's injuries from the use of the taser are sufficient to demonstrate excessive force under Fifth Circuit precedent. They argue only that the force used was objectively reasonable.

The objective unreasonableness of the force "depends on the facts and circumstances of the particular case," and the Court is to look at "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 501 (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989)). Where a suspect "committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command," the *Graham* factors do not justify force used against him. *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012). This analysis is also a fact-intensive inquiry, and where facts are disputed, the Court views the facts in the light most favorable to the nonmovant. *See Sierra Club, Inc.*, 627 F.3d at 138.

As stated above, from the facts as Plaintiff presents them, Defendants had no probable cause to reasonably believe that Plaintiff had committed a crime, and from Defendant McNelly's own testimony, they were not arresting him for any crime. (*See* McNelly Depo. [35-14] at p. 15.) Furthermore, Defendant Purvis testified that Plaintiff had done nothing that suggested he would be violent other than have a clenched fist once he complied with the order to stop walking. (Purvis Depo. [38-6] at pp. 42-43.) Weathersby disputes the claim that Plaintiff's fist was clenched.

11

(Weathersby Depo. [38-5] at pp. 80-81.) Plaintiff and his sisters testified that Plaintiff's hands were on his head when he was first tased by Defendant Purvis. (Plaintiff Depo. [38-1] at p. 45; Bourne Depo. [38-2] at p. 28; Holloway Depo. [38-4] at p. 24.) Weathersby, however, testified that Plaintiff was moving his hands from his head to behind his back in compliance with an order given to him by Defendants when he was first tased. (Weathersby Depo. [38-5] at p. 59:9-14.) Furthermore, though Plaintiff's testimony is confusing on the point, as he testifies both that he got on the ground when ordered and that he paused in confusion after receiving the order to get on the ground, (Plaintiff Depo. [38-1] at pp. 42:7-14, 44:7-24), in Weathersby's version of the events, Plaintiff was on his knees on the ground when he was first tased. (Weathersby Depo. [38-5] at pp. 59:5-7, 81:8-10.)

Plaintiff testified that he was not resisting when the officers handcuffed him, but that they manhandled him in such a way that his hands ended up cuffed between his legs. (Plaintiff Depo. [38-1] at p. 48-49.) His sisters also testified that Plaintiff was cuffed with his arm between his legs. (Bourne Depo. [38-2] at p. 32; Holloway Depo. [38-4] at p. 25.) In the process of being handcuffed, Plaintiff and Weathersby contend that he was constantly being tased and that this was when the second and third tasers were deployed, one of them by Defendant McNelly. (Plaintiff Depo. [38-1] at p. 49; Weathersby Depo. [38-5] at p. 59; Purvis [38-6] at p. 32.)

Defendants argued that they feared for their safety, invoking Plaintiff's history of mental illness, his size, and the fact that he had weapons in his possession when the vehicular accident occurred. They ignore, however, the fact that they knew nothing about his medical history at that point in time, and the fact that Plaintiff had freely told him about his knife and gun and had handed them over to officers earlier. All the Defendants knew about Plaintiff was that there was a writ to take custody in Jefferson Davis County for a mental evaluation. (Purvis Depo. [38-6] at p. 13.)

Viewing the facts in a light most favorable to Plaintiff, then, Defendants were facing a large man with an unknown mental illness who had committed no crime, and who was unarmed, following their orders, and demonstrating no signs of violence. On these facts, a reasonable officer would not have an objectively reasonable belief that the amount of force used was warranted. Therefore, the Court finds that there exists facts on which a reasonable jury could find a violation of Plaintiff's Fourth and Fourteenth Amendment rights.

Our determination regarding qualified immunity is not done, however, once it is found that a plaintiff has established an underlying constitutional violation. The Court must also determine that the right violated was a clearly-established right of which a reasonable person should have had knowledge. *See Pearson*, 555 U.S. at 231, 129 S. Ct. 808. "Although the Supreme Court has repeatedly admonished courts not to define clearly established law at a high level of generality, this does not mean that 'a case directly on point' is required. Rather, 'existing precedent must have placed the statutory or constitutional question *beyond doubt*.'" *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L.Ed.2d 1149)) (emphasis in original). The relevant question is whether precedent gave Defendants "fair warning." *Id.*

In this case, there can be no question that the right was clearly established by precedent. The Fifth Circuit held in *Newman v. Guedry* that the tasing of an individual when "he committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command" was a violation of that individual's Fourth Amendment rights. 703 F.3d at 764. Therefore, because a reasonable officer would have known that tasing Plaintiff was objectively unreasonable under clearly established law, the Court does not find that Defendants are entitled to qualified immunity and will **deny** their Motion for Summary Judgment [35].

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment [35] is **granted in part** and **denied in part**.

It is **granted** in that the unlawful search claim under 42 U.S.C. § 1983 is **dismissed with prejudice** against Defendants in their individual and official capacities.

It is **denied** as to all other claims pending against Defendants.

SO ORDERED AND ADJUDGED this the 8th day of April, 2016.

>  *s/Keith Starrett*
>  UNITED STATES DISTRICT JUDGE