IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 16-60406

United States Court of Appeals
Fifth Circuit
**FILED**
February 22, 2017
Lyle W. Cayce
Clerk

RUSTY HOLLOWAY,

   Plaintiff - Appellee

v.

MIKE PURVIS, Individually and in his Official Capacity;
JASON MCNELLY, Individually and in his Official Capacity,

   Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:15-CV-86

Before HIGGINBOTHAM, JONES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

   Plaintiff-appellee Rusty Holloway sued defendants-appellants Mike Purvis and Jason McNelly, deputies in Lamar County, Mississippi, alleging that they unlawfully seized him and used excessive force in violation of the Fourth Amendment. The deputies moved for summary judgment based on qualified immunity, and the district court denied their motion. We **REVERSE IN PART, VACATE IN PART,** and **REMAND.**

---

   [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60406

## BACKGROUND

Holloway is a six-foot-six, former Mississippi State University offensive lineman who was in a car accident with a deputy near Hattiesburg in Lamar County, Mississippi. Deputies Purvis and McNelly were among the officers who responded to the scene of the accident. Holloway had a .40-caliber handgun and buck knife (though the exact location of these weapons is disputed), which he turned over upon the officers' request. Holloway also repeatedly entered and exited an ambulance at the scene; he testified in his deposition that he did so because he did not want to pay for the ambulance ride. Upon finally stepping out of the ambulance, he told the officers, "Jesus walked[,] I'll walk," and proceeded to walk down the highway toward a hospital in Hattiesburg.

In the meantime, Holloway's sisters had arrived at the scene. One sister told the responding officers that there was an outstanding mental writ—an order to take a person alleged to be in need of treatment into custody for a mental evaluation—for Holloway in Jefferson Davis County, Mississippi. Mississippi law provides that a relative of a person alleged to be in need of treatment may swear an affidavit making that allegation before a chancery court clerk. Miss. Code § 41-21-65(2). Based on that affidavit, the clerk, "upon the direction of the chancellor of the court, shall issue a writ directed to the sheriff of the proper county to take into custody the person alleged to be in need of treatment and to bring the person before the clerk or chancellor[.]" *Id.* § 41-21-67(1). Holloway's sister, Danielle, had sworn such an affidavit in a chancery court in Jefferson Davis County, describing Holloway as, among other things, suicidal, aggressive, and depressed. A chancery judge had then issued a "Writ to Take Custody [of Holloway] for Mental Examination of Retention" directed to "the Sheriff of Jefferson Davis County."

2

No. 16-60406

After learning of the mental writ, various officers confirmed the existence and validity of the writ. The officers first called the Lamar County dispatcher to confirm that the writ was active. After that call, Sheriff Danny Rigel of Lamar County called Sheriff Ron Strickland of Jefferson Davis County to confirm that the writ was active and to offer assistance. Sheriff Strickland confirmed that the writ was active and accepted Sheriff Rigel's offer to assist in taking Holloway into custody. Sheriff Rigel then called Purvis and told him that he had "verif[ied] that Sheriff Strickland was in possession of a certified copy of the writ to take Holloway into custody and ha[d] asked for assistance in bringing Holloway into custody."

The officers subsequently followed Holloway to take him into custody. Holloway testified in his deposition that he was walking along the highway with his hands on his head and that he stopped and did not turn around when officers ordered him to stop. He testified that the officers told him to get down, but he did not comply because he was thinking "how am I going to get down on the ground if my hands [are] up?" He testified that he stood there for no "more than 20, 30 seconds" before somebody shot him in the back with a taser, after which he fell to the ground. He testified that he was tased again as the officers attempted to handcuff him and that he passed out thinking, "I guess I'm fixing to come see you God[.]" He also testified that he did not recall being kicked or hit with a fist or baton. Finally, he testified that the officers told him to stop resisting, but he said he was only involuntarily moving due to shocks.

Holloway sued Lamar County, Purvis, and McNelly under 42 U.S.C. § 1983, alleging that his seizure was unlawful, that the seizure constituted false imprisonment, and that the officers used excessive force. After discovery, Purvis and McNelly moved for summary judgment based on qualified immunity. The district court denied qualified immunity as to both the

3

No. 16-60406

unreasonable-seizure/false-imprisonment claims[1] and the excessive-force claim. As to the first, the court found that the deputies "were not authorized [under Mississippi law] to take custody under the writ [because it was only addressed to the sheriff of Jefferson Davis County], and even if they were, they have presented nothing to establish that this writ fulfilled the warrant requirement of the Fourth Amendment." The court thus held that the deputies violated "clearly established law that a warrantless arrest without probable cause is unconstitutional." As to the second, the district court held that "a reasonable officer would have known that tasing [Holloway] was objectively unreasonable under clearly established law[.]" The "clearly established law" was this court's statement in *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) that tasing constituted excessive force where a person "committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command." After unsuccessfully requesting that the court alter or amend its order, Purvis and McNelly appealed.

## ANALYSIS

In this interlocutory appeal, the court is limited to considering whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment. *Cantrell v. City of Murphy*, 666 F.3d 911, 922 (5th Cir. 2012). "In ruling on this question, we must assume that the plaintiffs' version of the facts is true," and "[o]ur review of the legal significance of the facts is de novo." *Id.* The qualified-immunity inquiry asks: (1) whether a violation of a constitutional right occurred; and (2) whether that constitutional right was

---

[1] The district court considered both claims together "[a]s both claims ultimately depend on whether there existed probable cause to arrest[.]" For the sake of brevity, we refer to the claims collectively as the unreasonable-seizure claim.

4

No. 16-60406

clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Purvis and McNelly contend that they are entitled to qualified immunity with respect to the unreasonable-seizure and excessive-force claims.

## A. Unreasonable Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures[.]" U.S. Const. amend. IV. Holloway claims that his seizure was unreasonable, and the district court held that it is "clearly established law that a warrantless arrest without probable cause is unconstitutional." We disagree that the law, as applied to these facts, was clearly established. For example, this court held in *Cantrell v. City of Murphy*, 666 F.3d 911 (5th Cir. 2012), that officers may constitutionally seize a person without a warrant when the officers have probable cause to believe the person, whom they believe to be suicidal, is a danger to himself or others. Albeit not definitive, *Cantrell* suggests that the law was not plainly established that the deputies' conduct was impermissible.

Here, the deputies knew facts that they could reasonably believe established probable cause. One of Holloway's sisters alerted them that there was an outstanding mental writ. The deputies called dispatch to confirm that that information was correct. Their boss, Sheriff Rigel, told them not only that the writ was valid and active, but also that they were to take Holloway into custody. The deputies could thus reasonably infer that the procedural requirements undergirding the writ—i.e., an affidavit setting forth mental health problems and a judge's signature—had been met. Moreover, both the mental writ statute and the Mississippi Supreme Court state that such writs are intended to target persons believed to be a danger to themselves or others.

5

No. 16-60406

See *Bethany v. Stubbs*, 393 So. 2d 1351, 1353 (Miss. 1981) (describing the statutes as "provid[ing] for commitment where the individual is dangerous to himself or others"); Miss. Code § 41-21-61(e) (describing a person with mental illness as a person who "poses a substantial likelihood of physical harm to himself or others"). Thus, the information available to the deputies, their marching orders, and existing law supported their reasonable belief that they were acting constitutionally to arrest Holloway. Because the deputies were neither "plainly incompetent" nor "knowingly violat[ing] the law," the deputies are entitled to qualified immunity on this claim.

**B. Excessive Force**

The Fourth Amendment similarly protects individuals from the use of excessive force. "[T]o state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive in need, and (3) the use of force [] was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008). The district court and parties focused on the third element of objective unreasonableness, which "depends on the facts and circumstances of the particular case," including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 501 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The district court denied qualified immunity, concluding it was clearly established that "[w]here a suspect 'committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command,' the *Graham* factors do not justify the force used against him." (quoting *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012)).

The deputies contend that the district court's unreasonable seizure conclusion tainted the court's analysis of excessive force, and they highlight

No. 16-60406

Holloway's "sworn deposition testimony [] that he failed to comply with the Officers' commands to get on the ground." We agree that because the district court wrongly rejected the deputies' reasonable reliance on the mental writ, it miscalculated the basis for their use of force. The deputies' understanding of the mental writ and surrounding facts made it reasonable to infer that Holloway, a very formidable individual, might be a danger to himself or others if he resisted arrest. Further, given arguable but minor disputes of fact, and no significant injury, it appears that the deputies may not have used force excessive to the need when they arrested Holloway.

The deputies' prayers for relief, however, did not ask this court to render judgment on the excessive force claim. Instead, they requested that the court remand "with instructions for a new analysis as to the excessive force claim." Although their counsel belatedly asked the court during oral argument to render judgment, our precedent states that parties are limited to the relief requested in their briefs. *See Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 270 (5th Cir. 1998).

For these reasons, we **REVERSE** the district court's judgment on the unreasonable-seizure claim; and we **VACATE** and **REMAND** the excessive force claim for proceedings consistent with this opinion.

7